1  JEFFREY A. NEEDELMAN (SBN 193892)
   P.O. Box 471146
2  San Francisco, California 94147-1146
   Telephone (415) 441-4401
3  Facsimile (415) 441-4956
   E-Mail: jneedelmanesq@sbcglobal.net

4

5  Attorney and Plaintiff Pro Se

6

7

8                  UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11

   JEFFREY A. NEEDELMAN,                )  CASE NO. 08-CV-0442-L-RBB
12                                       )
                    Plaintiff,           )  **PLAINTIFF'S OPPOSITION TO**
13                                       )  **DEFENDANTS' [12(b)(6)] MOTIONS TO**
        vs.                              )  **DISMISS COMPLAINT CONTAINING**
14                                       )
   PENNSYLVANIA HIGHER EDUCATION         )  **(1)    STATEMENT OF REASONS IN**
15 ASSISTANCE AUTHORITY dba AMERICAN     )         **OPPOSITION; AND**
   EDUCATION SERVICES; KEY BANK, N.A.;   )
16 & EDUCATION CREDIT MANAGEMENT         )  **(2)    ANSWERING MEMORANDUM OF**
   SERVICES;                             )         **POINTS AND AUTHORITIES**
17                                       )
                    Defendants.          )  **[Concurrently filed with Requests for**
18                                       )  **Judicial Notice & Declaration of Plaintiff In**
                                         )  **Support of Opposition]**
19                                       )
                                         )
20                                       )  Noticed Hearing Date
                                         )  (Ordered off-calender): June 30, 2008
21                                       )  Dept.: 14
   _____)  Judge: M. James Lorenz
22

23

24

25

26

27

28

                                    **(CASE NO. 08-CV-0442-L-RBB)**

*TABLE OF CONTENTS*

STATEMENT OF REASONS IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS ................................. -1-

ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES ................ -3-

    I.     Introduction ................................................. -3-

    II.    Statement of Facts ........................................... -4-

    III.   Standards For Determining Motions To Dismiss ...................... -8-

    IV.   The Confirmation And Fulfillment Of A Chapter 13 Plan With
         Provisions To Pay 28% Of Student Loan Principal Over 5 Years
         With No Accrual Of Interest "In Full Satisfaction Thereon"
         Permanently Bans Enforcement Of The Debt, Notwithstanding
         The Exemption Of These Debts From The Discharge Order ............ -9-

    V.    Defendants' Failure To Object To The Plan Before
         Confirmation Waived Objections To Provisions Of The Plan
         Not In Conformity With The Bankruptcy Code, Including No
         Accrual Of Post-Petition Interest And Forgiveness Of
         Outstanding Principal After Completion Of The Plan ................ -11-

    VI.   Defendants Had Adequate Notice Of And Opportunity To
         Object To The Provisions Of Plaintiff's Chapter 13 To Satisfy
         The Requirements Of Due Process .................................. -16-

    VII.  If *In re Repp*, *In re Enewally*, And *In re Ransom* Apply To This
         Case, They Do Not Apply Retroactively To Plaintiff's Plan That
         Was Confirmed Before These Cases Were Decided ................... -19-

    VIII. Defendants' Motions To Dismiss Ignore Plaintiff's Alternative
         Request For Relief In The Event The Court Finds The Plan's
         Discharge Provision Unenforceable, For A Declaration That
         Collection Of Interest Should Have Been Stayed Or Not Have
         Accrued During The 5-Year Plan .................................. -21-

    IX.   Plaintiff Second Claim For Reimbursement Legitimately Seeks
         A Return Of All Student Loan Payments Made Since The
         Conclusion Of His Chapter 13 Case Or, If The Court Finds The
         Plan's Discharge Provision Unenforceable, A Reallocation Of
         The Amounts Misapplied Toward Interest ......................... -22-

CONCLUSION ........................................................ -23-

CERTIFICATE OF SERVICE ........................................... -24-

1

## *TABLE OF AUTHORITIES*

2 *Statutes*

3   11 U.S.C. § 341(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -14--18-, -22-

4   11 U.S.C. § 362(c)(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -21-

5   11 U.S.C. § 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -17-

6   11 U.S.C. § 523(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -13-

7   11 U.S.C. § 1141(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

8   11 U.S.C. § 1307(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

9   11 U.S.C. § 1325(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -15-

10   11 U.S.C. § 1327(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-

11   11 U.S.C. § 1328(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -13-

12 *Cases*

13   *Andersen v. UNIPAC-NEBHELP (In re Andersen),*
14   179 F.3d 1253 (10th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-, -15-, -19-

15   *Andrews v. Loheit (In re Andrews),*
   49 F.3d 1404 (9rh Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

16   *Branch v. Tunnell,*
17   14 F.3d 449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

18   *Buckman Co. v. Plaintiff's Legal Committee,*
   531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) . . . . . . . . . . . . . . . . . . . . . . . -20-

19   *Chevron Oil Co. v. Huson,*
20   404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) . . . . . . . . . . . . . . . . . . . . . . . -20-

21   *D.H. Overmyer Co. v. Frick Co.,*
   405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

22   *Educ. Credit Mgmt. Corp. v. Repp (In re Repp),*
23   307 B.R. 144 (B.A.P. 9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16--20-

24   *Enewally v. Washington Mutual Bank (In re Enewally),*
   368 F.3d 1165 (9th Cir.2004), *cert. denied,*
25   543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004) . . . . . . . . . . . . . . . . . . . -17--20-

26   *Galbraith v. County of Santa Clara,*
   307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

27   *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),*
28   193 F.3d 1083 (9th. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . -12--18-, -20-

*Haddock v. Board of Dental Examiners of California,*
       777 F.2d 462 (9th Cir.1985) ........................................... -9-

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
       896 F.2d 1542 (9th Cir.1990) .......................................... -9-

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,*
       997 F2d 581 (9th Cir. 1993) ........................................... -14-

*Hishon v. King & Spalding,*
       467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ........................ -9-

*In re Chappell,*
       984 F.2d 775 (7th Cir. 1993) .......................................... -12-

*In re Int'l Nutronics, Inc.,*
       28 F.3d 965 (9th Cir.),
       *cert. denied,* 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994) ............. -10-

*In re Mersmann,*
       505 F.3d 1033 (10th Cir. 2007) ..................................... -19-, -20-

*In re Richardson,*
       192 B.R. 224 (Bankr. S.D. Cal. 1996) ................................... -10-

*Memphis Light, Gas and Water Div. v. Craft,*
       436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) .......................... -18-

*Mullane v. Central Hanover Trust Co.,*
       339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ...................... -18-

*Nash v. Kester,*
       765 F.2d 1410 (9th Cir. 1985) ......................................... -10-

*Neitzke v. Williams,*
       490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ....................... -9-

*NL Industries, Inc. v. Kaplan,*
       792 F.2d 896 (9th Cir.1986) ........................................... -8-

*Pfeiffer v. Hartford Fire Ins. Co.,*
       929 F.2d 1484 (10th Cir.1991) ......................................... -20-

*Romani v. Shearson Lehman Hutton,*
       929 F.2d 875 (1st Cir.1991) ........................................... -9-

*Russell v. Landrieu,*
       621 F.2d 1037 (9th Cir.1980) .......................................... -8-

*Sallie Mae Servicing Corporation v. Ransom (In re Ransom),*
       336 B.R. 790 (B.A.P. 9th Cir. 2005) ...................... -10-, -11-, -17--23-

*Trulis v. Barton,*
       107 F.3d 685 (9th Cir. 1995) .......................................... -10-

*Vinion v. Amgen Inc.*,
    2008 WL 836901 (9th Cir. 2008) .................................................. -9-

*Western Thrift & Loan Assoc. v. Blair (In re Blair)*,
    21 B.R. 316 (Bankr. S.D. Cal. 1982) ...................................... -12-


**Other Authorities**

4 Charles A. Wright & Arthur R. Miller,
    Federal Practice and Procedure, § 1363 (2007 & 2008 Supp.) ................... -8-

Bankr. LR 3015-8(a) ............................................................ -5-,-15-

Civ LR 5.2 ...................................................................... -24-

Civ LR 7.1(f)(3)(b ................................................................ -1-

Fed. R. Bankr. P. 2002 ................................................. -5-, -14-, -18-

Fed. R. Bankr. P. 3001(e)(2) .................................................... -6-

Fed. R. Bankr. P. 3001(e)(5) .................................................... -6-

Fed. R. Bankr. P. 3007 ......................................................... -6-

Fed. R. Bankr. P. 3015(d) .............................................. -5-, -14-, -18-

Fed. R. Bankr. P. 7001(6) ...................................................... -19-

Fed. R. Civ. P. 12(c) ........................................................... -9-

Fed. R. Civ. P. 12(d) ........................................................... -9-

Fed. R. Civ. P. 12(b)(6) ............................................... -1-, -8-, -9-

Fed. R. Civ. P. 8(f) ............................................................ -8-

*Waller v. Truck Ins. Exchange, Inc.*,
    900 P.2d 619 (Cal. 1995) ................................................... -14-

### STATEMENT OF REASONS IN OPPOSITION
### TO DEFENDANTS' MOTIONS TO DISMISS
### [Civ LR 7.1(f)(3)(b)][1]

Plaintiff JEFFREY A. NEEDELMAN ("plaintiff") relies on the following reasons in opposition to the Rule 12(b)(6) motion to dismiss his complaint filed by defendants PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY erroneously sued as PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AUTHORITY dba AMERICAN EDUCATION SERVICES; KEY BANK, N.A.; and EDUCATION CREDIT MANAGEMENT SERVICES (collectively "defendants;" individually "defendant PHEAA," "defendant Key Bank," and "defendant ECMC"):

1.      Plaintiff's confirmed Chapter 13 Plan promised to pay 28% of student loan principal over 5 years with no accrual of interest "in full satisfaction thereon." The confirmation of plaintiff's Plan without objection or appeal operates as a de facto discharge and permanently bans enforcement of his student loan debts, notwithstanding the exemption of the student loan debts from the discharge order.

2.      Defendants' failure to object to the Plan before confirmation waived objections to provisions of the Plan that were not in conformity with the Bankruptcy Code, such as the provisions providing for no accrual of post-petition interest and forgiveness of outstanding principal after completion of the Plan.

3.      Defendants had adequate notice of, and opportunity to object to the provisions of Plaintiff's Chapter 13 Plan to comport with the requirements of due process.

4.      The outcome of this case should be controlled by the law of the Ninth Circuit in effect at the time plaintiff's Plan was confirmed in 2002. The law at that time permitted Chapter 13 discharges of student loans and interest where, as here, no creditors object to the confirmation of a Chapter 13 plan with such provisions or appeal a confirmed plan with such provisions. Defendants rely on cases decided on or after 2002 holding such discharges violate due process. If

---

[1] Civil Local Rule 7.1(f)(3)(b), "Opposing party's papers and contents," states an "opposition shall contain a brief and complete statement of all reasons in opposition to the position taken by the movant" as well as "an answering memorandum of points and authorities . . . ."

1  those cases apply, they should not apply retroactively under the factors the United States Supreme

2  Court has held should guide courts in making that determination.

3          5.       Defendants' motions to dismiss also ignore plaintiff's alternative request for relief

4  for a declaration that collection of interest should have been stayed or not have accrued during the

5  5-year plan and a reduction of his current indebtedness to reflect proper allocation of the payments

6  plaintiff made during the Plan to principal only.  In the event the Court agrees with defendants that

7  the Plan's provision forgiving the unpaid balance of student loan principal is unenforceable, it still

8  may find that interest should not have accrued or, at the very least, deny defendants' motions to

9  dismiss on the ground that collection of the interest should have been stayed during the 5-year

10  plan.

11          6.       Plaintiff second claim for reimbursement legitimately seeks a return of student loan

12  payments made since the conclusion of the Chapter 13 case or, alternatively a reallocation of the

13  amounts of the payments misapplied toward interest.

14

15  DATED:  June 10, 2008                    Respectfully Submitted,

16

17

18                                           Jeffrey A. Needelman,
                                             Attorney and Plaintiff Pro Se

19

20

21

22

23

24

25

26

27

28

*ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES*

## I.    *Introduction*

The Court should deny defendants' motions to dismiss. Contrary to defendants' arguments, plaintiff's confirmed Chapter 13 Plan promised to pay 28% of student loan principal over 5 years with no accrual of interest "in full satisfaction thereon." The confirmation of plaintiff's Plan without objection or appeal permanently bans enforcement of his student loan debts, notwithstanding the exemption of the student loan debts from the discharge order.

Defendants' failure to object to the Plan before confirmation waived objections to provisions of the Plan that were not in conformity with the Bankruptcy Code, such as the provisions providing for no accrual of post-petition interest and forgiveness of outstanding principal after completion of the Plan. Defendants had adequate notice of, and opportunity to object to the provisions of Plaintiff's Chapter 13 Plan to comport with the requirements of due process.

The outcome of this case should be controlled by the law of the Ninth Circuit in effect at the time plaintiff's Plan was confirmed in 2002. The law at that time permitted Chapter 13 discharges of student loans and interest where, as here, no creditors object to the confirmation of a Chapter 13 plan with such provisions or appeal a confirmed plan with such provisions. Defendants rely on cases decided on or after 2002 holding such discharges violate due process. If those cases apply, they should not apply retroactively under the factors the United States Supreme Court has held should guide courts in making that determination.

Defendants' motions to dismiss also ignore plaintiff's alternative request for relief, in the event the Court finds the Plan's discharge provisions unenforceable, for a declaration that collection of interest should have been stayed or not have accrued during the 5-year plan and a reduction of his current indebtedness to reflect proper allocation of the payments plaintiff made during the Plan to principal only. Finally, contrary to defendants' contentions, plaintiff second

1  claim for reimbursement legitimately seeks a return of student loan payments made since the

2  conclusion of the Chapter 13 case or, alternatively a reallocation of the amounts of the payments

3  misapplied toward interest.

4

5      **II.    *Statement of Facts***

6

7      Plaintiff is an attorney admitted in 1997 to practice law in California. (Declaration of

8  Plaintiff in Support of Opposition to Motion To Dismiss, paragraph 1.) Plaintiff attended the

9  evening program at George Washington University Law School from 1993 to 1995. (Pl.'s Decl., ¶

10  2.) In 1995, plaintiff transferred to the University of California, Los Angeles School of Law

11  ("UCLA"), completing his Juris Doctor in 1997. (Pl.'s Decl., ¶ 2.)

12      To attend law school, plaintiff took Stafford student loans, among other student loans,[2] in

13  the following amounts totaling $54,000:

| Disbursement Date | Original Amount of Loan |
|---|---|
| 08/04/1993 | $ 7,500.00 |
| 12/22/1993 | $ 1,000.00 |
| 08/19/1994 | $ 8,500.00 |
| 09/20/1995 | $ 8,500.00 |
| 09/20/1995 | $10,000.00 |
| 08/28/1996 | $ 8,500.00 |
| 08/28/1996 | $10,000.00 |

18  (Pl.'s Decl., ¶ 3 & Ex. "A" to Pl.'s Decl.) By September 6, 2001, these Stafford Loans had

19  increased from the original amount of $54,000 to $67,341.59 in the following amounts

| Disbursement Date | Original Loan Amount | Amount after Third Forebearanc And Temporary Chapter 7 Stay |
|---|---|---|
| 08/04/1993 | $ 7,500.00 | $ 8,841.72 |
| 12/22/1993 | $ 1,000.00 | $ 1,178.86 |
| 08/19/1994 | $ 8,500.00 | $10,011.16 |
| 09/20/1995 | $ 8,500.00 | $10,011.16 |
| 09/20/1995 | $10,000.00 | $14,104.78 |
| 08/28/1996 | $ 8,500.00 | $10,011.16 |
| 08/28/1996 | $10,000.00 | $13,182.75 |

25  (Pl.'s Decl., ¶ 4 & Ex. "B" to Pl.'s Decl.)

26

27

---

[2] Plaintiff also had taken "Law Access" loans, a Perkins loan, and a Sallie-Mae bar study

28  loan. These loans are not the subject of this declaratory relief action.

1    On December 6, 2001, plaintiff filed a Voluntary Petition for Chapter 13 Bankruptcy in

2  United States District Court for the Southern District of California, Case No. 01-12461-H13.

3  (Plaintiff's Request for Judicial Notice ("RJN"), ¶ 1, Ex. "A.") The Petition attached a Chapter 13

4  Plan. (RJN, ¶ 1, Ex. "A.") On Schedule F, "Creditors Holding Unsecured Nonpriority Claims,"

5  the Petition listed all of the Plaintiff's student loan creditors, including SLSC Keycorp. Trust, the

6  entity plaintiff believed to be the creditor for the above Stafford Loans. (RJN, ¶ 1, Ex. "A.")

7  Specifically incorporating by reference the student loans listed in the Petition, Paragraph 10 of the

8  Plan stated,

9    Unsecured Claims. After Dividends to all other creditors pursuant to
     this Plan, the Trustee shall pay dividends pro rata on claims allowed
10    unsecured herein to _28%_ of the amount allowed *in full satisfaction
     thereon.* (If left blank, pay 100%)
11  (RJN, ¶ 1, Ex. "A" [emphasis added].)

12    On December 12, 2001, the Bankruptcy Court Clerk mailed the Notice of the § 341(a)

13  Creditors' Meeting, to be held on January 17, 2002, to all creditors listed in the Petition, including

14  SLSC Corp. (RJN, ¶ 2, Ex. "B.") Pursuant to Federal Rules of Bankruptcy Procedure, Rules 2002

15  and 3015(d), a summary of the plan accompanied the Notice of the § 341(a) Creditors' Meeting.

16  (RJN, ¶ 2, Ex. "B.") The summary stated,

17    The plan proposes payments of $500.00 per month to the Trustee,
     and will pay a 28.00% dividend to unsecured creditors over a plan
18    length of approximately 65 months. Unsecured claims to be paid .00
     percent A.P.R. interest. . . .
19

20  (RJN, ¶ 2, Ex. "B.") The Notice of the § 341(a) Creditors' Meeting stated, "In order to participate

21  in the distribution of any dividend, A CREDITOR MUST FILE A CLAIM, even if the creditor is

22  not on the list of creditors. CLAIMS NOT FILED BY Apr 17, 2002 WILL NOT BE ALLOWED

23  EXCEPT AS PROVIDED BY LAW." (RJN, ¶ 2, Ex. "B" [capitals in original].) Pursuant to

24  Bankruptcy Local Rule 3015-8(a), the Notice stated a confirmation hearing would not be held if no

25  timely objections to the plan were raised. (RJN, ¶ 2, Ex. "B.")

26    No creditors appeared at the § 341(a) Creditors' Meeting or filed objections to the plan.

27  On or about January 24, 2002 the Court issued an Order Confirming Debtor(s) Plan and Allowing

28

-5-                    (CASE NO. 08-CV-0442-L-RBB)

1  Attorneys Fees. (RJN, ¶ 3, Ex. "C.") *See* 11 U.S.C. § 1325(b)(1) (If neither the Chapter 13 trustee

2  nor an unsecured creditor objects, the court may confirm a plan not providing for full repayment of

3  unsecured claims or does not apply all of the debtor's disposable income for the "applicable

4  commitment period" to fund plan payments.). The Confirmation Order expressly referred to the

5  Plan, which, incorporated the student loans in the Petition by reference. (RJN, ¶ 3, Ex. "C.")

6          On April 10, 2005, the Bankruptcy Court for each of the 7 loans issued a Notice of

7  Transfer and Pending Subrogation of Claim And Order Substituting Transferee as Payee on Claim.

8  (RJN, ¶ 4, Ex. "D.") The Notices listed SLSC Corp. as the Original Claimant and defendant

9  ECMC as Transferee. (RJN, ¶ 4, Ex. "D.") Pursuant to Federal Rules of Bankruptcy Procedure,

10  Rules 3001(e)(2) and (e)(5), they gave either the Original Claimant or Transferee 20 days to

11  request a hearing date on the pending subrogation. (RJN, ¶ 4, Ex. "D.") Otherwise the order

12  would become effective. (RJN, ¶ 4, Ex. "D.") Neither SLSC nor defendant ECMC objected to the

13  subrogation. Instead, defendant ECMC voluntarily subrogated to the proofs of claims SLSC had

14  filed, as indicated by the June 26, 2006 Notice of Claims Filed and Intention to Pay Claims,

15  pursuant to 11 U.S.C. § 502(a) and Federal Rules of Bankruptcy Procedure, Rule 3007. (RJN, ¶ 5,

16  Ex. "E.") The amounts of the claims for the Stafford and other student loans in the Bankruptcy

17  Action were listed in a column under the heading "amount." (RJN, ¶ 5, Ex. "E.") The next

18  column was entitled "% forgive," under which it was indicated that 72% of each of the loans

19  would be forgiven after completion of the plan. (RJN, ¶ 5, Ex. "E.") The amounts claimed

20  included additional interest and were significantly higher than the original loan amounts and

21  amounts of the loans on September 6, 2001:

| Disbursement Date | Original Loan Amount | Loans after Chapter 7 Stay | SLSC/ECMC's Claims in Bankruptcy |
|---|---|---|---|
| 08/04/1993 | $ 7,500.00 | $ 8,841.72 | $ 9,826.76 |
| 12/22/1993 | $ 1,000.00 | $ 1,178.86 | $ 1,310.17 |
| 08/19/1994 | $ 8,500.00 | $10,011.16 | $ 11,058.38 |
| 09/20/1995 | $ 8,500.00 | $10,011.16 | $ 11,058.38 |
| 09/20/1995 | $10,000.00 | $14,104.78 | $ 15,580.22 |
| 08/28/1996 | $ 8,500.00 | $10,011.16 | $ 11,058.38 |
| 08/28/1996 | $10,000.00 | $13,182.75 | $ 14,561.74 |

27  (RJN, ¶ 5, Ex. "E.") The total amount of the Stafford loans claimed was $74,454.03, $7,112.44

28

1    more than the amount they were on September 6, 2001 of $67,341.59, and $20,454.03 more than

2    they were when originally borrowed at $54,000. Plaintiff was given 25 days to object to the

3    amounts and manner of payment of the claims or request a hearing on the claims. (RJN, ¶ 5, Ex.

4    "E.") Plaintiff did not object. Rather he made payments of at least $540.00 per month throughout

5    the duration of the plan.

6         On April 12, 2007, the Chapter 13 Trustee made an Interim Final Report and notified

7    creditors they had 28 days to object, file declarations in opposition to intended action and request

8    and a hearing. (RJN, ¶ 6, Ex. "F.") The Notice summarized the claims allowed and paid, stating

9    the plaintiff had paid $29,197.11 in principal and 0.00 in interest on $104,275.55 in allowed

10   amounts, the percentage to unsecured creditors being 28%. (RJN, ¶ 6, Ex. "F.") The attached

11   Interim Final Report stated plaintiff had paid the Stafford loans at issue in the following amounts:

| Disbursement Date | SLSC/ECMC's Claims in Bankruptcy | Amount Plaintiff Paid in Bankruptcy |
|---|---|---|
| 08/04/1993 | $9,826.76 | $2,751.49 |
| 12/22/1993 | $1,310.17 | $366.85 |
| 08/19/1994 | $11,058.38 | $3,096.35 |
| 09/20/1995 | $11,058.38 | $3,096.35 |
| 09/20/1995 | $15,580.22 | $4,362.46 |
| 08/28/1996 | $11,058.38 | $3,096.35 |
| 08/28/1996 | $14,561.74 | $4,077.29 |

17   (RJN, ¶ 6, Ex. "F.") Thus, of the total amount claimed at the commencement of plaintiff's plan by

18   SLSC/ECMC of $74,454.03, plaintiff fulfilled his agreement to pay $20,847.14 over a five year

19   period. (Compl., ¶ 9.) No objections being filed, the Court signed a discharge order on May 29,

20   2007. (RJN, ¶ 7, Ex. "G.") The Trustee issued his final report on June 6, 2007 with the same

21   information regarding percentages of principal paid on the claims and 0.00% interest allowed.

22   (RJN, ¶ 8, Ex. "H.")

23        Om July 12, 2007, American Education Services sent plaintiff a letter, stating the Stafford

24   loans had been repurchased by defendant Keybank, N.A. in the following amounts:

| Loan Program | Current Owner | Disburs. Date | Principal Balance | Loan Status |
|---|---|---|---|---|
| Stafford | Keybank | 08/04/1993 | $10,144.62 | Repayment |
| Stafford | Keybank | 12/22/1993 | $1,354.17 | Repayment |
| Stafford | Keybank | 08/19/1994 | $11,414.30 | Repayment |
| Stafford | Keybank | 09/20/1995 | $11,414.30 | Repayment |

-7-                    (CASE NO. 08-CV-0442-L-RBB)

| UnsubStfd | Keybank | 09/20/1995 | $16,080.46 | Repayment |
| Stafford  | Keybank | 08/28/1996 | $11,414.30 | Repayment |
| Unsubstfd | Keybank | 08/28/1996 | $15,028.82 | Repayment |

(Compl., ¶ 10.)  The combined amount the letter contended plaintiff owed Keybank, N.A. was

$76,850.97.  (Compl., ¶ 10.)  This amount was than the $74,454.03 owed before the

commencement of the 5-year plan.  (Compl., ¶ 10.)

Plaintiff disputed this result in letters to defendant PHEAA dated July 23, 2007, August 27,

2007, and September 14, 2007.  (Compl., ¶ 11.)  On September 27, 2007, plaintiff received a letter

from defendant ECMC, advising that it considered the Student Loans with interest still owing

during the period of the 5-year plan.  (Compl., ¶ 12.)  On October 17, 2007, plaintiff received a

letter from defendant PHEAA stating that student loan debts are non-dischargeable without an

adversary proceeding instituted by the debtor.  The letter warned, "Inasmuch as interest continues

to accrue on the outstanding principal, it is in your best interest, to make payments in accordance

with the terms of the promissory note(s)."  (Compl., ¶ 13.)  To avoid assessment of interest, late

penalties and creditor harassment, Plaintiff in October of 2007 began making monthly payments

on these loans in the amount of $971.01, as demanded in monthly letters from defendant PHEAA.

(Compl., ¶ 14.)

### III.    *Standards For Determining Motions To Dismiss*

When deciding a motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6),

the Court should read the complaint broadly and liberally in conformity with the mandate in

Federal Rule of Civil Procedure, Rule 8(f), that pleadings are to be construed "to do substantial

justice."  4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1363 (2007

& 2008 Supp.).  The Court accepts all factual allegations and reasonable inferences drawn from

the factual allegations as true. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

All reasonable factual inferences will be drawn to aid the pleader and ambiguities will be resolved

in the pleader's favor. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980).  Only "if as a

-8-                    (CASE NO. 08-CV-0442-L-RBB)

1  matter of law 'it is clear that no relief could be granted under any set of facts that could be proved

2  consistent with the allegations' " must the claims be dismissed. *Neitzke v. Williams*, 490 U.S. 319,

3  327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S.

4  69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).  In short, the "test is whether the facts, as

5  alleged, support any valid claim entitling the plaintiff to relief," regardless of whether plaintiff

6  erroneously used the wrong legal theory. *Haddock v. Board of Dental Examiners of California*,

7  777 F.2d 462, 464 (9th Cir.1985).

8       "Generally, a district court may not consider any material beyond the pleadings in ruling on

9  a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555

10  n.19 (9th Cir.1990). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings

11  are presented to and not excluded by the court, the motion must be treated as one for summary

12  judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the

13  material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  But a few contextual documents

14  and facts such as those in plaintiff's declaration "whose authenticity no party questions, but which

15  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion

16  to dismiss.  Such consideration does 'not convert the motion to dismiss into a motion for summary

17  judgment.'" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (quoting *Romani v. Shearson*

18  *Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir.1991)), overruled on other grounds in *Galbraith v.*

19  *County of Santa Clara*, 307 F.3d 1119, 1125-1126 (9th Cir. 2002); *see also Vinion v. Amgen Inc.*,

20  2008 WL 836901 (9th Cir. 2008) (District court properly considered written agreements between

21  biopharmaceutical companies and drug clinical trial participants, ruling on motion to dismiss,

22  since complaint alleged the contents of the agreements, and no party questioned their authenticity).

23

24  **IV.    *The Confirmation And Fulfillment Of A Chapter 13 Plan With***

25  ***Provisions To Pay 28% Of Student Loan Principal Over 5 Years***
    ***With No Accrual Of Interest "In Full Satisfaction Thereon"***

26  ***Permanently Bans Enforcement Of The Debt, Notwithstanding***
    ***The Exemption Of These Debts From The Discharge Order***

27  Title 11 of the United States Code section 1327(a) states,

28

-9-        **(CASE NO. 08-CV-0442-L-RBB)**

1
2
3

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

4   Under this statute, "[o]nce a bankruptcy plan is confirmed, it is binding on all parties and all

5   questions that could have been raised pertaining to the plan are entitled to res judicata effect. *See*

6   11 U.S.C. § 1141(a)." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995); *accord In re*

7   *Richardson*, 192 B.R. 224, 228 (Bankr. S.D. Cal. 1996). "Res judicata bars a party from bringing

8   a claim if a court of competent jurisdiction has rendered final judgment on the merits in a previous

9   action involving the same parties and claims. *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th

10  Cir.), *cert. denied*, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994)." *Id.* Since the

11  defendants "never appealed the bankruptcy court's confirmation order, the order is a final judgment

12  . . . ." *Trulis, supra*, 107 F.3d at 691.

13          Defendants cite *Nash v. Kester*, 765 F.2d 1410, 1413 (9th Cir. 1985) for the proposition

14  that a Chapter 13 plan is not a discharge. (*See, e.g.*, Mem. In Supp. Of Def. PHEAA's Mot. To

15  Dismiss at 5.) However, that case merely holds that, under 11 U.S.C. § 13 07(b), a debtor has an

16  absolute right to dismiss a Chapter 13 petition before obtaining a discharge of the debts and is not

17  barred under res judicata by the terms of the first confirmed plan after dismissal or from listing

18  debts in a later Chapter 13 petition that were listed in a previous Chapter 13 case dismissed

19  without prejudice. *Id.* Where, as here, the plaintiff has fulfilled the terms of the Chapter 13 plan

20  without objection or appeal of the confirmation order, the general rule is the plan operates as res

21  judicata over the rights of the parties. *Trulis, supra*, 107 F.3d at 691.

22          Defendants argue that the Bankruptcy Court's discharge order expressly excluded student

23  loans. (*See, e.g.*, Mem. In Supp. Of Def. PHEAA's Mot. To Dismiss at 4-5.) However, it is the

24  confirmation order that determines the rights of the parties, not the discharge order. 11 U.S.C. §§

25  1327(a), 1141(a); *Trulis, supra*, 107 F.3d at 691 (9th Cir. 1995); *In re Int'l Nutronics, Inc., supra*,

26  28 F.3d at 969.)

27          Defendants cite to the case of *Sallie Mae Servicing Corporation v. Ransom (In re Ransom)*,

28

-10-          **(CASE NO. 08-CV-0442-L-RBB)**

1   336 B.R. 790 (B.A.P. 9th Cir. 2005), arguing that the discharge order here, exempting student

2   loans, is "virtually identical to the discharge in *Ransom*." (*See, e.g.*, Mem. In Supp. Of Def.

3   PHEAA's Mot. To Dismiss at 5.) Unlike here, however, the confirmed Chapter 13 plan in *In re*

4   *Ransom* stated that student loan principal would be non-dischargeable. *Id.* at 792 ("Her chapter 13

5   plan directed the trustee to pay secured debt arrearages and priority claims, and then to pay the

6   `student loan debt which is non-dischargeable under 11 U.S.C. [§§ ] 523(a)(8) and 1328(a)(2)' in

7   full before paying other unsecured creditors."). To that extent, the discharge order in *In re Ransom*

8   merely reflected the confirmed plan.

9       The court recognized that "the essential features of a bankruptcy discharge and the

10  consequence of the `permanently binding plan provision' are the same and that "it follows that the

11  latter constitutes a de facto discharge." *In re Ransom, supra,* 336 B.R. at 794. As discussed

12  further *infra*, the court found that the provision of the confirmed plan seeking to relieve the debtor

13  of liability for post-petition interest on the student loans was not enforceable, not because of the

14  discharge order, but rather because of the absence of due process, which is not a problem here.

15      The court nonetheless recognized that "no interest accruing postpetition could be collected

16  without relief from the automatic stay" and that "[t]he automatic stay with respect to a chapter 13

17  debtor remains in effect until the discharge is granted following completion of the plan. 11 U.S.C.

18  § 362(c)(2)(c)." *Id.* at 795. Accordingly, it affirmed the portion of the bankruptcy court order that

19  adjusted the debtor's "balance to $25,500.24 to reflect the `stopping of interest during the five

20  years of Ms. Ransom's plan and the $11,417.78 in principal payments.'" *Id.* at 793, 800.

21

22      **V.      *Defendants' Failure To Object To The Plan Before Confirmation***

       ***Waived Objections To Provisions Of The Plan Not In Conformity***

23      ***With The Bankruptcy Code, Including No Accrual Of Post-***

       ***Petition Interest And Forgiveness Of Outstanding Principal After***

24      ***Completion Of The Plan***

25

26      "In most instances, failure to object translates into acceptance of the plan . . . .

27  (Citations.)" *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1409 (9rh Cir. 1995). A creditor

28

                                                        -11-        **(CASE NO. 08-CV-0442-L-RBB)**

1    who receives notice of the plan and an opportunity to object but fails to do so is bound by the

2    confirmed plan. *Western Thrift & Loan Assoc. v. Blair (In re Blair)*, 21 B.R. 316, 317-18 (Bankr.

3    S.D. Cal. 1982). This is so even where the confirmed plan contains a provision conflicting with

4    the Code. *In re Chappell*, 984 F.2d 775, 777-778, 782-783 (7th Cir. 1993).

5         In *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th. Cir.

6    1999), the Pardees filed a Chapter 13 plan that expressly purported to discharge post-petition

7    interest on a student loan debt that they owed to Great Lakes Higher Education Corporation

8    ("Great Lakes"). *In re Pardee, supra*, 193 F.3d at 1084. Great Lakes did not object to the plan

9    and it was later confirmed. *Id*. Great Lakes did not appeal confirmation of the plan. *Id*. After the

10    Pardees received their Chapter 13 discharge, however, Great Lakes attempted to collect $6,095.92,

11    the interest on the student loan debt that had accrued after the bankruptcy petition was filed. *Id*.

12    The Pardees filed a motion in the bankruptcy court to enforce the discharge of the interest and to

13    enjoin Great Lakes from further attempts to collect the debt. *Id*. The bankruptcy court granted the

14    motion and the Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's order

15    enjoining Great Lakes from further debt collection activity. *Id*. The BAP held (1) that the

16    confirmed Chapter 13 plan was res judicata regarding the discharge provision contained in the plan

17    even if the provision violated the Bankruptcy Code, and (2) that Great Lakes' failure to object to

18    the plan or to appeal its confirmation constituted a waiver of its ability to challenge the provision

19    or collect the interest. *Id*.

20         On appeal, the Ninth Circuit affirmed, holding that it did not have to consider whether

21    post-petition interest is non-dischargeable because Great Lakes' failure to object to the plan or to

22    appeal the confirmation order constituted a waiver of its right to collaterally attack the confirmed

23    plan." *In re Pardee, supra*, 193 F.3d at 1085. The Ninth Circuit reasoned,

24              The Pardees' plan contained a provision that expressly purported to
              discharge the post-petition interest on their student loan debt and
25              relieve them of liability for the post-petition interest. (Footnote.)
              The Pardees placed language in their plan that, if confirmed, would
26              clearly have a negative impact on Great Lakes' ability to collect
              post-petition interest. Great Lakes had notice of the plan and of this
27              discharge provision, yet it failed to file an objection to the plan.
              Great Lakes clearly failed to take an active role in protecting its own

28

-12-        **(CASE NO. 08-CV-0442-L-RBB)**

> interests. It now takes the position that the discharge provision contained in the Pardees' plan violated 11 U.S.C. §§ 523(a)(8) and 1328(a)(2) because it purported to discharge student loan debt without addressing the two exceptions to the nondischargeability of student loan debt set forth in § 523(a)(8). However, Great Lakes should have raised this argument in the bankruptcy court by objecting to the plan prior to its confirmation, or by appealing the bankruptcy court's confirmation of the plan. It failed to do either.

*Id.* at 1085-86.

In affirming the BAP, the Ninth Circuit relied on a Tenth Circuit case, *Andersen v. UNIPAC-NEBHELP (In re Andersen)*, 179 F.3d 1253, 1259 (10th Cir.1999). *In re Pardee, supra*, 193 F.3d at 1086. There, the debtor's confirmed Chapter 13 plan included a provision which purported to discharge the balance of an unpaid student loan. *In re Andersen, supra*, 179 F.3d at 1254. The creditor failed to object to or appeal the bankruptcy court's confirmation order. *See id.* The Tenth Circuit concluded that the debt was discharged by the creditor's failure to challenge the plan during the bankruptcy proceedings, along with the res judicata effect of the confirmed plan and strong policy favoring the finality of confirmation orders. *See id.* at 1259. The court stated, "[a] creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests." *Id.* at 1257. The court continued, "it is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result." *Id.* The court stated that "[a]lthough the provision at issue did not comply with the Code, it is now too late for [the creditor] to make the argument" that it failed to timely raise in the bankruptcy proceedings. *See id.* at 1259.

Here, as in *In re Andersen*, plaintiff's Plan contained a provision expressing his intent to relieve him of liability for the percentage of student loan principal that would remain unpaid after 5 years. Like *In re Pardee*, the Plans provisions expressed plaintiff's intent also to be relieved of liability for post-petition interest that otherwise would have accrued on the student loan debt. Specifically incorporating by reference the student loans listed in the Petition, Paragraph 10 of the Plan stated,

> Unsecured Claims. After Dividends to all other creditors pursuant to

this Plan, the Trustee shall pay dividends pro rata on claims allowed
unsecured herein to _28%_ of the amount allowed *in full satisfaction
thereon.* (If left blank, pay 100%)
(RJN, ¶ 1, Ex. "A" [emphasis added].)

State law governing contracts generally governs the interpretation of a Chapter 13 plan,
except where state law is inconsistent with the debtor's rights and obligations under the plan. *See*
*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F2d 581, 588 (9th Cir. 1993). Under
California law, "language in a contract must be interpreted as a whole, and in the circumstances of
the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to
create an ambiguity where none exists." *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627
(Cal. 1995).

Interpreting the Plan as a whole, the interpretation of the phrase "in full satisfaction
thereon" in paragraph 10 unambiguously included satisfaction of liability for both post-petition
interest and principal above 28%. (RJN, ¶ 1, Ex. "A.") Although plaintiff's Plan did not include
any claims other than the student loan unsecured claims, Paragraphs 3 through 9 of the form used
to draft Plaintiff's plan contained provisions that would have governed other types of claims that
provided for interest of 10% per annum or 12% A.P.R., depending upon the type of claim. (RJN, ¶
1, Ex. "A.") The express reference to interest in Paragraphs 3 through 9, along with the absence of
an express provision for interest in paragraph 10, and the use of generally inclusive phrase "in full
satisfaction thereon" in paragraph 10 to describe the debt to be forgiven, show that the plan
embodied plaintiff's intent to be relieved from liability of both post-petition interest and principal
above 28%. (RJN, ¶ 1, Ex. "A.")

Also as in *In re Pardee*, plaintiff "had notice of the plan and of this discharge provision, yet
it failed to file an objection to the plan." *In re Pardee, supra*, 193 F.3d at 1086. On December 12,
2001, the Bankruptcy Court Clerk mailed the Notice of the § 341(a) Creditors' Meeting, to be held
on January 17, 2002, to all creditors listed in the Petition, including SLSC Corp. (RJN, ¶ 2, Ex.
"B.") Pursuant to Federal Rules of Bankruptcy Procedure, Rules 2002 and 3015(d), a summary of
the plan accompanied the Notice of the § 341(a) Creditors' Meeting. The summary stated,

The plan proposes payments of $500.00 per month to the Trustee,

-14-    (CASE NO. 08-CV-0442-L-RBB)

1    and will pay a 28.00% dividend to unsecured creditors over a plan
     length of approximately 65 months.  Unsecured claims to be paid .00
2    percent A.P.R. interest. . . .

3    (RJN, ¶ 2, Ex. "B.")

4        Pursuant to Bankruptcy Local Rule 3015-8(a), the Notice also stated that a plan

5    confirmation hearing would not be held if no timely objections to the plan were raised.  No

6    creditors appeared at the § 341(a) Creditors' Meeting or filed objections to the plan.  (RJN, ¶ 2, Ex.

7    "B.")  On or about January 24, 2002 the Court issued an Order Confirming Debtor(s) Plan and

8    Allowing Attorneys Fees ("Confirmation Order").  (RJN, ¶ 3, Ex. "C.")  *See* 11 USC § 1325(b)(1)

9    (If neither the Chapter 13 trustee nor an unsecured creditor objects, the court may confirm a plan

10   that does not provide for full repayment of unsecured claims or does not apply all of the debtor's

11   disposable income for the "applicable commitment period" to fund plan payments.).

12       Defendants contend that *In re Pardee* is distinguishable because the debtors' plan there

13   expressly provided for payment of the entire principal balance of their student loans and only

14   sought discharge of the interest of the loans.  (*See, e.g.*, Mem. Of Def. PHEAA's Mot. To Dismiss

15   at 9.)  "Here," according to defendants, "nothing in the Plan, Petition, Discharge Order or

16   Confirmation Order mentioned interest or attempted to discharge interest."

17       However, *In re Pardee* expressly approved of the holding in *In re Andersen*, which at the

18   time governed the law of the Tenth Circuit and permitted Plans that would result in discharge of

19   portions of unpaid student loan principal, when student loan creditors as here and as in *In re*

20   *Pardee* failed to object before confirmation of such a Plan.  *(In re Andersen)*, *supra*, 179 F.3d at

21   1259.  Thus, the principle approved in *In re Pardee* applies equally to Chapter 13 plans that intend

22   to relieve the debtor of liability for post-petition interest, plans that intend to relieve the debtor of

23   liability for unpaid portions of principle, or both.  The fact that the Pardees' Plan sought to

24   discharge the entire amount, as opposed to a portion of, outstanding student loan principal along

25   with the post-petition interest is a distinction without a difference.

26       Contrary to defendants' representations, moreover, the January 24, 2002 confirmation

27   order expressly stated that "[t]he debtor(s) Plan dated  12–5-01  is confirmed . . . ."  (RJN, ¶ 3, Ex.

28

                                                    -15-          **(CASE NO. 08-CV-0442-L-RBB)**

1  "C.")  As discussed *supra*, the Plan, read as a whole and as conveyed in the Notice of the § 341(a)

2  Creditors' Meeting, unambiguously notified the creditors that plaintiff was attempting to be

3  relieved of liability for post-petition interest in performing the Plan.  (RJN, ¶ 2, Ex. "B.")  Under

4  these circumstances, *In re Pardee* is the controlling precedent.  The failure of any creditor to object

5  to the Plan after notice of its relevant provisions and before the Court ordered it confirmed binds

6  them to its provisions.

7

8  **VI.**     ***Defendants Had Adequate Notice Of And Opportunity To Object***
   ***To The Provisions Of Plaintiff's Chapter 13 To Satisfy The***
9  ***Requirements Of Due Process***

10

11       Defendants argue that plaintiff "'flunked' due process" by

12             mail[ing] a form 25-day meeting Notice to no one in particular to a
             lockbox, which did not attach the Plan or the Petition.  Indeed, the
13             Plan itself did not even set forth Plaintiff's student loans. [¶] The
             gist of Plaintiff's argument is that [defendant] PHEAA should have
14             retrieved the Plan, retrieved the Petition, and objected, all within 25-
             days of Plaintiff's mailing of the Meeting Notice.

15

16  (Mem. Of Def. PHEAA's Mot. To Dismiss at 8, quoting  *Educ. Credit Mgmt. Corp. v. Repp (In re*

17  *Repp)*, 307 B.R. 144, 147 (B.A.P. 9th Cir. 2004).)  Defendants also argue that Plaintiff's Plan did

18  not seek to discharge the student loan debts.  (Mem. Of Def. PHEAA's Mot. To Dismiss at 8-9.)

19       Defendants mischaracterize the relevant facts and Plaintiff's argument.  Paragraph 10 of

20  the Plan did specifically incorporating by reference the student loans listed in the Petition.  (RJN, ¶

21  1, Ex. "A.")  The Notice of the § 341(a) Creditors' Meeting mailed on December 12, 2001

22  including more than merely form language.  (RJN, ¶ 2, Ex. "B.")  The summary accompanying the

23  Notice fully conveyed the provisions of the Plan that were important to the student loan creditors.

24  The summary stated,

25             The plan proposes payments of $500.00 per month to the Trustee,
             and will pay a 28.00% dividend to unsecured creditors over a plan
26             length of approximately 65 months.  Unsecured claims to be paid .00
             percent A.P.R. interest.
27  (RJN, ¶ 2, Ex. "B.")

28

                                              -16-        **(CASE NO. 08-CV-0442-L-RBB)**

1    Thus, defendants did not have to retrieve the Plan or the Petition to be apprised of its contents.

2    Defendants are also incorrect that Plaintiff's Plan, as summarized in the Notice of the § 341(a)

3    Creditors' Meeting, did not seek to discharge the student loan debts.

4    Defendants attempt to distinguish *In re Pardee*, *supra*, 193 F.3d 1083, which did not

5    address whether a confirmed chapter 13 plan that bound the student loan creditors violated due

6    process. They argue that "the *Pardee* court simply stated that the creditor received notice[,]"

7    whereas "[h]ere, the bankruptcy court's records do not indicate that [defendant] PHEAA received

8    proper notice." (*See, e.g.*, Mem. Of Def. PHEAA's Mot. To Dismiss at 8.) However, defendants

9    cannot seriously argue they did not have actual notice. On April 10, 2005, the Bankruptcy Court

10   issued 7 Notice of Transfer and Pending Subrogation of Claim And Order Substituting Transferee

11   as Payee on Claim, one for each of the student loans at issue. (RJN, ¶ 4, Ex. "D.") The Notices

12   listed SLSC as the Original Claimant and defendant ECMC as Transferee. (RJN, ¶ 4, Ex. "D.")

13   Pursuant to Federal Rules of Bankruptcy Procedure, Rules 3001(e)(2) and (e)(5), they gave either

14   the Original Claimant or Transferee 20 days to request a hearing date on the pending subrogation.

15   (RJN, ¶ 4, Ex. "D.") Otherwise the orders would become effective. (RJN, ¶ 4, Ex. "D.")

16   Neither SLSC nor defendant ECMC exercised this second opportunity to object to the Plan

17   or the subrogation. Instead, defendant ECMC voluntarily subrogated to the proofs of claims that

18   had been filed for the Stafford loans at issue, as indicated by the June 26, 2006 Notice of Claims

19   Filed and Intention to Pay Claims, pursuant to 11 U.S.C. § 502(a) and Federal Rules of Bankruptcy

20   Procedure, Rule 3007 (RJN, ¶ 5, Ex. "E."), and accepted payments of at least $540.00 per month

21   for the 5 year length of the plan. Defendant ECMC also could have objected to the April 12, 2007

22   Interim Final Report of the Chapter 13 Trustee, which again summarized the claims, stated the

23   plaintiff had paid $29,197.11 in principal and 0.00 in interest on $104,275.55 in allowed amounts,

24   and notified creditors they had 28 days to object, file declarations in opposition to intended action

25   and request and a hearing. (RJN, ¶ 6, Ex. "F.")

26   Defendants rely on *Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165,

27   1173 (9th Cir.2004), *cert. denied*, 543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004); *In re*

28

-17-    **(CASE NO. 08-CV-0442-L-RBB)**

1    *Repp, supra*, 307 B.R. 144, 149; and *In re Ransom, supra*, 336 B.R. 790;.all of which were

2    decided after *In re Pardee*. *In re Enewally* did not concern student loan debts per se but rather

3    dealt with a Chapter 13 plan allowing modification of mortgage lien on non-residential real estate,

4    which was confirmed while an adversary proceeding, regarding whether mortgage lien could be

5    bifurcated into secured and unsecured liens and whether secured lien could be paid over a term

6    exceeding life of the plan, was pending. 368 F.3d at 1167-68. Under those circumstances, the

7    Court held that confirmation of the Chapter 13 plan did not have res judicata effect on the

8    adversary proceeding. *Id.* at 1173. In so holding, the court explained, "Although confirmed plans

9    are res judicata [i.e. claim preclusive] to issues therein, the confirmed plan has no preclusive effect

10   on issues that must be brought by an adversary proceeding, *or were not sufficiently evidenced in a*

11   *plan to provide adequate notice to a creditor.*" *In re Enewally*, 368 F.3d at 1173 (emphasis

12   added).

13      Here, the summary accompanying the Notice of the § 341(a) Creditors' Meeting

14   sufficiently evidenced the student loan issues to provide adequate notice to the creditors. (RJN, ¶

15   2, Ex. "B.") As the dissent pointed out in *In re Repp, supra*, 307 B.R. at 156, due process does not

16   mandate technical rules of service. Rather, it requires "notice reasonably calculated, under all the

17   circumstances, to apprise interested parties of the pendency of the action and afford them an

18   opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306,

19   314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted); *accord Memphis Light, Gas and*

20   *Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In this regard, *Mullane*

21   "necessitates a case by case analysis. Constitutional due process is not automatically violated with

22   the breach of a service rule." *In re Repp, supra*, 307 B.R. at 156 (Ryan, Bankr. J., dissenting).

23      Here, Plaintiff's Plan, pursuant to Federal Rules of Bankruptcy Procedure, Rules 2002 and

24   3015(d), was notice reasonably calculated to apprise the creditors of the Bankruptcy case to afford

25   them the opportunity to present objections. Plaintiff's Plan, as summarized in the Notice of the §

26   341(a) Creditors' Meeting, clearly and expressly conveyed Plaintiff's intention to pay a portion of

27   his student loan debts back without interest over 60 months and, thereafter, discharge the

28

-18-      **(CASE NO. 08-CV-0442-L-RBB)**

1   remaining indebtedness. (RJN, ¶ 2, Ex. "B.")  This fact distinguishes this case from *In re Ransom*,

2   *supra*, where the court held that the facts did "not pass *Enewally* muster" not only because "the

3   plan was not served with notice of a nature and quality associated with the adversary proceeding

4   that Rule 7001(6) requires for determining the dischargeability of debts" but, also because "the

5   terms of the supposedly 'binding' plan provision [we]re too ambiguous to place anyone on notice

6   that student loan debt is being discharged." *In re Ransom*, *supra*, 336 B.R. at 798.  Unlike the plan

7   in *In re Ransom*, Plaintiff's Plan provisions were not "misleading and" did not "have the structure

8   of multi-step ambush." *Id.*

9       In addition, the fact defendant ECMC expressly subrogated to the filed proofs of claims

10   distinguishes this case from both *In re Repp* and *In re Ransom*.  (RJN, ¶ 4, Ex. "D.")  To the extent

11   due process under the Federal Constitution mandates service of a summons and complaint in the

12   manner prescribed by the Bankruptcy rules to initiate an adversarial proceeding, they are subject to

13   waiver by the defendant (See *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86, 92 S.Ct. 775,

14   31 L.Ed.2d 124 ("The due process rights to notice and hearing prior to a civil judgment are subject

15   to waiver.").  Neither *In re Repp* or *In re Ransom.* address a defendant's ability to waive due

16   process procedural protections.  Here, defendant ECMC's subrogation to the filed proofs of claims

17   was the equivalent of a general appearance in a civil action that submits a defendant to the

18   personal jurisdiction of the court.  (RJN, ¶ 4, Ex. "D.")

19

20       **VII.**   *If* **In re Repp, In re Enewally,** *And* **In re Ransom** *Apply To This*

                     *Case, They Do Not Apply Retroactively To Plaintiff's Plan That*

21                      *Was Confirmed Before These Cases Were Decided*

22

23       In *In re Mersmann*, 505 F.3d 1033, 1038 (10th Cir. 2007), the United States Court of

24   Appeals for the Tenth Circuit overruled its previous decision in *In re Andersen*, *supra*, 179 F.3d

25   1253, 1259, which, since 1999, had permitted student loans to be discharged in a proposed Chapter

26   13 plan, if unobjected to by a creditor and approved by the court.  In doing so, however, the Court

27   held that its decision only would be applied prospectively, stating, "Debtors without a confirmed

28

1   plan as of the publication of this opinion, thus, may not seek a discharge of their student loan debts

2   without first establishing "undue hardship" through an adversary proceeding." *Id.* at 1053.  The

3   Court found

4               prospective operation of the rule in this case satisfies the relevant
                *Chevron*[3] factors. Andersen has been the precedent of the Circuit
5               since 1999; hence, all potential debtors and creditors in the Circuit
                have been on notice of the legality of discharge-by-declaration for
6               nearly eight years. Equity disfavors disturbing the finality of these
                cases. The purpose of this new rule is to correct a misinterpretation
7               of the Bankruptcy Code and Rules. Revisiting past cases involving
                discharge-by-declaration does not further that goal, and could lead to
8               the reopening of cases long thought settled.

9           For the same reasons the *Chevron* factors applied in *In re Mersmann* to make its holding

10  prospective only, they also should apply here to make *In re Enewally*, *In re Repp* and *In re Ransom*

11  due process holdings prospective only.  As was *In re Andersen* in the Tenth Circuit before being

12  overruled in *In re Mersmann*, *In re Pardee* has been the precedent of the Ninth Circuit since 1999.

13  At least before *In re Enewally* and *In re Repp* in 2004, all potential debtors and creditors were

14  aware of the legality of discharging student loan debts in a Chapter 13 proceeding.  Under these

15  circumstances, the equities disfavor disturbing the finality of Plaintiff's plan, confirmed in 2002,

16  before *In re Enewally* and *In re Repp* in 2004 and *In re Ransom* in 2005.  (RJN, ¶ 3, Ex. "C.")

17          Defendants argue that the courts in *In re Repp* and *In re Ransom* applied their decisions

18  retroactively to the plaintiffs.  (Mem. Of Def. PHEAA's Mot. To Dismiss at 10, n. 2.)  However,

19  the parties did not make the prospective only argument in those cases.  (See *Buckman Co. v.*

20  *Plaintiff's Legal Committee*, 531 U.S. 341, 352-53, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) (a

21  case does not stand for a proposition not discussed.  Assuming *In re Repp* and *In re Ransom*

22  foreclose future reliance on *In re Pardee* in the Ninth Circuit, a point that Plaintiff does not

23

24  _____

25          [3]  *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
    These factors include: (1) whether the more recent rule or decision establishes "a new principle of
26  law, either by overruling clear past precedent on which litigants may have relied, or by deciding an
    issue of first impression whose resolution was not clearly foreshadowed;" (2) whether, given the
27  history, purpose and effect of the new rule, retroactive application of this rule will further or retard
    its operation; and (3) whether retroactive application of the new rule "could produce substantial
28  inequitable results." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1494 (10th Cir.1991)
    (citing *Chevron*, 404 U.S. at 106-07, 92 S.Ct. 349 (internal quotation omitted)).

1 | concede, the prospective-only analysis of *In re Mersmann* is applicable to Plaintiff's situation.

2

3 | **VIII.** ***Defendants' Motions To Dismiss Ignore Plaintiff's Alternative***
***Request For Relief In The Event The Court Finds The Plan's***
4 | ***Discharge Provision Unenforceable, For A Declaration That***
***Collection Of Interest Should Have Been Stayed Or Not Have***
5 | ***Accrued During The 5-Year Plan***

6

7 | Defendants' motions to dismiss ignore the alternative request for relief in plaintiff's

8 | complaint with respect to the first claim:

9 | Alternatively, pursuant to the first cause of action, for a declaration
that, during the pendency of the 5-year plan in Plaintiff's Chapter 13
10 | bankruptcy in the United States District Court for the Southern
District of California, Case No. 01-12461-H13, interest on the
11 | Student Loans' principal was stayed and should not have accrued
and that, therefore, Plaintiff is entitled to a credit against the
12 | principal claimed at the commencement of the 5-year plan of
$74,454.03 in the amount of the $20,847.14 paid to defendants
13 | during the plan..

14 | (Compl., pp. 6-7, Prayer for Relief, ¶ 2.) In the event the Court finds that the provisions of

15 | Plaintiff's Confirmed Chapter 13 Plan are not enforceable to discharge the outstanding principal,

16 | the Court still may find the Plan provision operated to bar accrual of interest during the plan, in

17 | which case the plaintiff's payments during the plan should have been applied to principal only, and

18 | the balance owed at the end of the 5 years should have been $74,454.03 minus $20,847.14 or

19 | $53,606.89 instead of the $76,850.97 defendants contend plaintiff owed at the end of the 5 years.

20 | Even if the Court disagrees with the proposition that interest should not have accrued

21 | during the 5-year plan, at the very least it must recognized that collection of the interest should

22 | have been stayed during that time and that the plaintiff's payments during the plan should have

23 | been applied to principal only. *See In re Ransom*, *supra*, 336 B.R. at 795 (recognizing. that "no

24 | interest accruing postpetition could be collected without relief from the automatic stay" and that

25 | "[t]he automatic stay with respect to a chapter 13 debtor remains in effect until the discharge is

26 | granted following completion of the plan. 11 U.S.C. § 362(c)(2)(c)"). The court in *In re Ransom*

27 | affirmed the portion of the bankruptcy court order that adjusted the debtor's "balance to

28

1   $25,500.24 to reflect the 'stopping of interest during the five years of Ms. Ransom's plan and the

2   $11,417.78 in principal payments.'" *Id.* at 793, 800. As an alternative to relieving Plaintiff from

3   his student loan debts entirely, a similar adjustment of the balances after applying plan payments to

4   principal only would be proper and would lower the current amounts of the loans.

6       **IX.**    ***Plaintiff Second Claim For Reimbursement Legitimately Seeks A Return Of All Student Loan Payments Made Since The Conclusion Of His Chapter 13 Case Or, If The Court Finds The Plan's Discharge Provision Unenforceable, A Reallocation Of The Amounts Misapplied Toward Interest***

10      With respect to the second claim in the complaint for reimbursement, plaintiff's complaint

11   requests "reimbursement, with prejudgement and postjudgment interest, of the monthly payments

12   Plaintiff has made on the aforementioned student loan debts since October of 2007 in the amount

13   of $971.01 [monthly.]" (Compl., p. 7, Prayer for Relief, ¶ 3.) Alternatively for the second claim,

14   plaintiff's complaint requests "reimbursement and reallocation toward principle of the portion of

15   the payments Plaintiff has made on the aforementioned student loan debts since October of 2007

16   in the amount of $971.01 [monthly] misapplied toward interest[.]" (Compl., p. 7, Prayer for

17   Relief, ¶ 3.) Defendants argue,

> 18    Plaintiff's Plan did not even purport to discharge interest. There was no mention of interest in the Petition, Plan, Confirmation Order or
> 19    Discharge Order. Plaintiff failed to provide [defendant] PHEAA with notice of any kind that he intended to discharge the interest. . . .
> 20    [N]o notice whatsoever was sent to [defendant] PHEAA related to Plaintiff's purported discharge of interest.

22   (Mem. Of Def. PHEAA's Mot. To Dismiss at 9-10 ) These statements are simply incorrect. The

23   December 12, 2001 Notice of the § 341(a) Creditors' Meeting, of which defendants' own papers

24   request judicial notice, plainly states "Unsecured claims to be paid .00 percent A.P.R. interest. . . ."

25   (RJN, ¶ 2, Ex. "B.") Other documents, including the June 26, 2006 Notice of Claims Filed and

26   Intention to Pay Claims (RJN, ¶ 5, Ex. "E") and the April 12, 2007 Interim Final Report of the

27   Chapter 13 Trustee (RJN, ¶ 6, Ex. "F") show that plaintiff wanted a discharge of interest.

1  Defendants' further rely on *In re Ransom*, *supra*, for the proposition that postpetition interest

2  accruing on nondischargeable student loan debt is likewise nondischargeable.  336 B.R. at 794.

3  However, for reasons discussed *supra*, *In re Ransom* is either distinguishable or not applicable

4  retroactively.  Furthermore, the court in *In re Ransom* found the express concession in the debtors

5  Plan that her student loan debt would be nondischargeable had consequences for the "the plan

6  provision that purport[ed] to stop accrual of postpetition interest against the estate . . . ."

7

8                                        ***CONCLUSION***

9

10        For the foregoing reasons, plaintiff respectfully requests this Court to deny defendants'

11  motions to dismiss.  Alternatively, if the motion is granted, plaintiff requests leave to amend his

12  complaint.

13

14  DATED: June 10, 2008                    Respectfully Submitted,

15

16

17                                          Jeffrey A. Needelman,
                                            Attorney and Plaintiff Pro Se

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE
[Civ. LR 5.2]

I hereby certify that I am admitted to practice before this Court and that a copy of the

foregoing brief was this date served upon all counsel of record by placing a copy of the same in the

United States Mail at San Francisco, California, postage prepaid, and sent to their last known

address as follows:

Michael L. Meeks
Pepper Hamilton, LLP
4 Park Plaza, Suite 1200
Irvine, California 92614

Timothy P. Burke, Esq.
Timothy P. Burke & Associates
1136 Fremont Avenue, Suite 108
South Pasadena, California 91030

Rupert P. Hansen
Cox, Wootton, Griffin, Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, California 94150

I declare under penalty of perjury under the laws of the United States that the above is true and

correct.  Executed on June 10, 2008, at San Francisco, California.

Jeffrey A. Needelman, Esq.

-24-    (CASE NO. 08-CV-0442-L-RBB)